Allen Hyman (California State Bar No. 73371)
LAW OFFICES OF ALLEN HYMAN
10737 Riverside Drive
North Hollywood, CA 91602
Phone: (818) 763-6289
Fax: (818) 763-4676
E-mail: lawoffah@aol.com

Oren S. Giskan  * *Pro Hac Vice Pending*
GISKAN SOLOTAROFF & ANDERSON LLP
90 Broad Street, 10th Floor
New York, New York 10004
Phone: (212) 847-8315
Fax: (646) 520-3237
E-mail: ogiskan@gslawny.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOUR JAYS MUSIC COMPANY and JULIA RIVA,<br><br>                              Plaintiffs,<br><br>                    v.<br><br>GOOGLE LLC, VALLEYARM DIGITAL LIMITED, LENANDES LTD, GIACOMO VERANI, and LIMITLESS INT. RECORDINGS,<br><br>                              Defendants. | **COMPLAINT FOR COPYRIGHT INFRINGEMENT AND DEMAND FOR JURY TRIAL** |

## Jurisdiction

1.     The Court has jurisdiction over the subject matter of this action against Defendants Google LLC, Valleyarm Digital Limited, Lenandes Ltd, Giacomo Verani, and Limitless Int. Recordings pursuant to 28 U.S.C. § 1338(a) because this is an action for copyright infringement arising under the Copyright Act of 1976, 17 U.S.C. §§ 101, 106, 115, 501, 602 *et seq*.

**Introduction**

2.    Plaintiffs are the legal and/or beneficial copyright owners of musical works authored by Harry Warren, one of the premier composers of American music.

3.    Harry Warren wrote over 800 songs, including *At Last, Chattanooga Choo Choo, I Only Have Eyes for You, You Must Have Been a Beautiful Baby, Jeepers Creepers, The Gold Diggers' Song (We're in the Money), Lullaby of Broadway, You'll Never Know, On the Atchison, Topeka and the Santa Fe, That's Amore, Nagasaki, There Will Never Be Another You,* and *The More I See You*.

4.    The Composition Chart annexed as Exhibit A provides a list of Plaintiffs' copyrighted compositions at issue in this case (the "Subject Compositions").

5.    The works of Warren have been recorded by the most prominent jazz and popular artists of all time, including Benny Goodman, Bing Crosby, Cab Calloway, Charlie Parker, Coleman Hawkins, Count Basie, Dean Martin, Ella Fitzgerald, Frank Sinatra, Glen Miller, John Coltrane, Judy Garland, Louis Armstrong, Miles Davis, Ray Charles, and Shirley Bassey, Tony Bennett, and Sarah Vaughan to name only a few. These monumental works of art are, quite literally, national treasures.

6.    These and other recordings of Plaintiffs' copyrighted musical works have been pirated by the Defendants in this case. Defendants are all players in the digital music business that participate in, and jointly profit from, making digital phonorecord deliveries (*i.e.*, downloads) of pirated recordings of the Subject Compositions.

7.    Digital phonorecord deliveries of musical recordings constitute a reproduction and distribution of the musical work embodied in the digital recording and require a license from the copyright owner of the musical composition, sometimes referred to as a "mechanical license."

8.    Defendants have failed to obtain any license that would authorize them to reproduce, distribute, or sell the recordings of the Subject Compositions identified

on Exhibit B and, as a result, Defendants have infringed Plaintiffs' exclusive rights of reproduction and distribution of the Subject Compositions under 17 U.S.C. §§ 106(1)(3).

9.      Further, the activity of making digital phonorecord deliveries of pirated recordings of the Subject Compositions does not qualify for a compulsory license or as a covered activity under Section 115 of the Copyright Act.

10.     A list of the pirated recordings of the Subject Compositions that Defendants have reproduced and distributed without authorization, including by making digital phonorecord deliveries, thus far identified, is set forth in the Infringement Chart (Exh. B).

11.     All the recordings identified on Exhibit B are pirated. Plaintiffs have thus far identified over 60 pirated recordings of the Subject Compositions that have been separately reproduced and distributed as digital phonorecord deliveries by Defendants in the Google Play store as set forth in the Infringement Chart annexed as Exhibit B. Defendants have infringed these works in a concerted and distinct distribution chain.

## Defendants' Piracy is Massive and Flagrant

12.     The scope and flagrant nature of Defendants' piracy cannot be understated. It is obvious that the recordings listed in Exhibit B are pirated by virtue of the scope of the Limitless catalog, the replication of the original album artwork (while removing the original label logos), and the continued distribution of legitimate versions of the recordings by the rightful record label owners on Google Play.

13.     Limitless, which has no web presence and no listing on Discogs.com, is selling recordings by virtually every well-known recording artist from the 1930s through the 1960s, including Frank Sinatra, Ella Fitzgerald, Miles Davis, Louis Armstrong, Mel Torme, Ray Charles, Tony Bennet, and Judy Garland.

**COMPLAINT FOR COPYRIGHT INFRINGEMENT AND DEMAND FOR JURY TRIAL**

14.    In addition, strong evidence of the piracy can be gleaned directly from the Google Play store from the comparison of the bootlegged Limitless catalog entries side-by-side with legal recordings being sold by legitimate record labels.

15.    For example, Album cover art has been an essential part of the packaging and marketing and labels have taken great care to create album artwork commensurate with the music it accompanied. Not so with Limitless, which has often either stolen the album art and music wholesale or employed stock artwork for its bootlegged albums.

16.    Invariably, Limitless has simply applied a silver border with its name written around the original release artwork and obscuring the original label logo as exemplified by the following screenshots comparing the Limitless release with the original:





17.    In many instances, Google Play is selling the legitimate release by the original label side by side with Limitless' bootlegged copy. For example, in 1962, Capitol Records released the Bobby Darin's album, <u>Look At Me Now</u>, which included his recording of the Warren composition *You'll Never Know*. Capitol sells the recording on Google Play in direct competition with Defendants, who sell their pirated

copy for about half the price. In addition, Defendants have appropriated the recording and artwork (eliminating the Capitol logo) as evidenced by the following screenshot:



https://play.google.com/store/search?q=Oh!%20Look%20At%20Me%20Now%20you%27ll%20never%20know&c=music (11/20/2019)

18.    Similarly, in 1960, MGM Records (now part of Universal Music Group) released Connie Francis's recording of the Warren composition *That's Amore* as part of the More Italian Favorites album. Universal continues to sell the recording on Google Play in direct competition with Defendants. Once again, Defendants have appropriated the original recording and artwork and are offering their pirated copy of the recording at about half the price, as evidenced by the following screenshot:



https://play.google.com/store/search?q=More%20Italian%20Favorites%20That%27s%20Amore%20Connie%20Francis&c=music (11/19/2019)

19.    The scope and scale of Defendants' piracy operation cannot be understated. Defendants have, on occasion, flagrantly bootlegged an entire label's

catalog for a particular artist. For example, as shown in the following screenshots, Defendants claim to have compiled: (a) The Singles of Bobby Bland; (b) The Complete Capitol Small Group Recordings of Benny Goodman; (c) The Complete Savoy And Dial Studio Recordings of Charlie Parker; and (d) The Complete Recordings of the Paul Desmond Quartet With Jim Hall:

  

20.    For addition, for older recordings originally released before albums were popular, Defendants have simply compiled the singles and applied the Limitless border around a simple background or a stock photograph of the artist, as illustrated by the following screenshots:

   

21.    In addition to the pirated recordings of Plaintiffs' compositions, Defendants have distributed a broad and deep catalog of thousands of other pirated recordings through the Google Play store, including many entire albums of seminal musical works.

COMPLAINT FOR COPYRIGHT INFRINGEMENT AND DEMAND FOR JURY TRIAL

22.    For example, the Limitless catalog available in the Google Play store includes the following seminal albums:

a.   Elvis Presley's debut album, <u>Elvis Presley:</u>



b.   <u>Surfin' USA,</u> by The Beach Boys:



c.   James Brown's debut album, <u>Please, Please, Please:</u>



1

2

d.  Bob Dylan's debut studio album, <u>Bob Dylan</u>:



3

4

5

6

7

8

9

e.  Roy Orbison's <u>Crying</u>:

10

11

12

13

14

15

16

23.    Google's own customers have noticed that the Limitless albums are

17

pirated and have alerted Google to the piracy, but Google has not taken any action.

18

For example, Google is selling a legitimate version of the Bob Dylan album <u>The</u>

19

<u>Freewheelin' Bob Dylan</u>, released by Sony side by side with the Limitless bootleg:

20



21

22

23

24

25

26

27

28

8

24.   The Limitless bootleg catalog page on Google Play has elicited comments from Google users noting the poor quality of the recording and asking, "Not on Sony? Then why is Google streaming this bootleg?":



25.   All of this should have made it obvious that Limitless is operating a huge music piracy operation. Valleyarm and Google chose to ignore the evidence of piracy and to participate in the infringement on a massive scale.

26.   To put this case in context, in 2007, Jammie Thomas-Rasset, a single mother of four in Brainerd, Minnesota, was found liable, after three separate jury trials, for copyright infringement for using file sharing software that enabled the unauthorized downloading and distribution of 24 recordings by the Goo Goo Dolls and Def Leppard, among others. The juries awarded statutory damages in all three trials of up to $80,000 per infringement. The Eighth Circuit Court of Appeals ultimately affirmed statutory damages in the amount of $9,250 for each infringed recording, for a total award of $222,000. Ms. Thomas-Rassett declared bankruptcy as she had "no other option."

27.   In 2009, Joel Tenenbaum, a Massachusetts college student, who also used file-sharing software that permitted others to download 30 recordings by Limp Bizkit and Blink-182, was found liable and the jury awarded statutory damages of $22,500 per recording, for a judgment that totaled $675,000 forcing Mr. Tenenbaum to file for Chapter 7 bankruptcy.

28.     Unlike Ms. Thomas-Rassett and Mr. Tenenbaum who were not alleged to have sold their infringing recordings or profited from their conduct, Defendants in this case have engaged in massive music piracy operation for the purpose of generating profits from their sales of pirated recordings and by other means.

29.     The copyright infringement operation detailed in this Complaint is only the latest in a long line of piracy schemes that have plagued composers, publishers, and record labels since the inception of the music industry over 100 years ago, when the perforated rolls used by player pianos to perform musical works were pirated. See *Aeolian Co. v. Royal Music Co.*, 196 F. 926 (W.D.N.Y. 1912).

30.     As the technology employed by the music industry to reproduce musical works advanced, bootlegging efforts by music pirates kept pace. In the 1960s and 1970s, organized criminal enterprises engaged in record and tape piracy operations on a scale that is dwarfed by the infringing conduct explained herein. Like the Defendants in this case, the "tape pirates" and "record pirates" of years past unlawfully duplicated popular pre-existing recordings, and then claimed their liability was limited by the compulsory license provision of the 1909 Copyright Act, § 1(e).

31.     The landmark case *Duchess Music Corp. v. Stern*, 458 F.2d 1305 (9th Cir. 1972) settled the issue as to whether tape pirates could limit their liability for piracy under the compulsory license provision of the 1909 Copyright Act. In *Duchess*, the defendant tape pirate engaged in the same conduct identified in this Complaint, and claimed her conduct was lawful because the compulsory license provision of the Copyright Act authorized the reproduction and distribution of the musical works embodied on the recordings she pirated. The Ninth Circuit rejected the argument, stating, "She may not continue her piracy under the flag of compulsory licensing." The *Duchess* court concluded that the tape pirates' activity was ineligible for a compulsory license and that reproduction of a musical composition on a pirated

recording infringed the copyright in the composition, even when a compulsory license was claimed.[1]

32.     The holding in *Duchess* was codified when the Copyright Act was revised in 1976. The statutory bar against compulsory licensing of pirated recordings continues in the recent amendments to Section 115 of the Copyright Act, which provides that reproduction and distribution of pirated sound recordings is not a covered activity under Section 115 and is ineligible for a compulsory license.

33.     Defendants are nothing more than modern tape pirates and their conduct constitutes willful copyright infringement of the Subject Compositions in violation of the United States Copyright Act [17 U.S.C. §§ 101, 106, 115, 501, 602 *et seq.*] (the "Copyright Act").

### Four Jays Music Company & Julia Riva

34.     Plaintiff Four Jays Music Company is a California corporation with a principal place of business at 421 E. 6th St. in Los Angeles, California.

35.     Plaintiff Julia Riva is Harry Warren's granddaughter and the President of Four Jays Music Company. Julia Riva is a resident of Los Angeles, California.

### Google

36.     Defendant Google LLC ("Google") is a limited liability company organized under the laws of the State of Delaware with a place of business at 1600 Amphitheatre Parkway, Mountain View, California.

37.     Google has owned and operated a digital music store under various names since 2011, including "Google Music" at launch, and currently, "Google Play",

---

[1] The criminal conduct of "tape pirates" became a priority of the Attorney General of the United States, Edward H. Levi, in 1975 when the Justice Department determined that decisions reached by four Circuit Courts of Appeals, including the Ninth Circuit in *Duchess*, rendered tape pirates criminally liable even where the statutory royalty was tendered. See *Heilman v. Levi*, 391 F.Supp. 1106 (E.D.Wisc. 1975). Criminal copyright infringement sentences continue to this day. See *Matter of Zaragoza-Vaquero*, 26 I&N Dec. 814 (BIA 2016)(defendant sentenced to 33 months in prison and ordered to be removed from the United States for selling bootleg copies of music CDs at a Florida flea market, as a crime involving moral turpitude).

1  all selling permanent downloads. Google Play currently has a catalog of over 40
2  million tracks for sale as permanent downloads in the U.S.

3      38.    Google specifically selected and contracted with Valleyarm and/or
4  Limitless to provide the Limitless digital music catalog to be sold in its Google Play
5  store on negotiated financial terms.

6      39.    Google received all of the recordings of the Subject Compositions
7  identified on Exhibit B from Limitless and/or Valleyarm. Google then reproduced,
8  distributed and sold these pirated recordings of the Subject Compositions in Google
9  Play, without any licenses, as permanent downloads among other types of digital
10 phonorecord deliveries identified herein.

11                              *Valleyarm*

12     40.    Upon information and belief, Defendant Valleyarm Digital Limited
13 ("Valleyarm") is a business entity organized under the laws of Australia with a place
14 of business at Suite 1.09, 838 Collins Street, Docklands, VIC 3008, Australia.

15     41.    Valleyarm has distributed, and continues to distibute, digital music to the
16 Google Play store and has delivered thousands of recordings to Google Play for sale
17 throughout the U.S.

18     42.    Valleyarm specifically selected and contracted with Limitless to provide
19 the Limitless digital music catalog to be sold in the Google Play store on negotiated
20 financial terms.

21     43.    At Limitless' direction, Valleyarm unlawfully reproduced all of the
22 pirated recordings of the Subject Compositions identified on Exhibit B, distributed
23 them to Google, and  unlawfully authorized Google to make digital phonorecord
24 deliveries in the Google Play store, as specifically set forth in Exhibit B.

25                              *Limitless*

26     44.    Upon information and belief, Defendant Lenandes Ltd ("Lenandes") is a
27 company organized under the laws of the United Kingdom with a registered office
28 address at 10 Philpot Lane, London, England, EC3M 8AA.

45.    Upon information and belief, Defendant Giacomo Verani ("Verani") is the sole director and shareholder of Lenandes and controls its operations.

46.    Upon information and belief, Defendant Limitless Int. Recordings is a business entity whose country of origin and business address are unknown to Plaintiffs and is controlled by Verani and/or is the trade name under which Verani and/or Lenandes are operating. Lenandes, Verani, and Limitless Int. Recordings are united in interest and shall be referred to, collectively, as "Limitless".

47.    Upon information and belief, Limitless directly pirated pre-existing recordings embodying the Subject Compositions identified on Exhibit B, distributed them to Valleyarm and/or Google, unlawfully authorized Valleyarm's distribution and delivery of the pirated recordings to Google for sale in its Google Play store, and unlawfully authorized Valleyarm and Google's making of digital phonorecord deliveries in Google's Google Play store as specifically set forth in the annexed Exhibit B.

48.    Upon information and belief, Limitless is simply duplicating recordings of the Subject Compositions made by others without permission and authorizing Valleyarm and Google to sell reproductions of the pirated copies for profit in Google Play.

**Jurisdiction, Venue and Joinder**

49.    This Court has personal jurisdiction over Defendants. Google has its principal place of business in this district in California and all Defendants have purposefully availed or directed their infringing activities in California.

50.    Further, Plaintiffs' copyright infringement claims arise out of (a) the reproduction and distribution of pirated recordings of the Subject Compositions listed in Exhibit B, occurring in California, directly by Defendants and/or at their purposeful direction and availment, including the sale of pirated recordings of Subject Compositions to California residents; or (b) transactions consummated within

California between Valleyarm and Google, concerning reproduction, distribution and delivery of the pirated recordings of the Subject Compositions.

51.   Limitless intentionally directed its distributor, Valleyarm, to distribute the pirated recordings to Google in California for sale in its Google Play store.

52.   Valleyarm and Limitless intentionally distributed and delivered the pirated recordings of the Subject Compositions identified in Exhibit B to Google, and unlawfully authorized Google to reproduce these pirated recordings of the Subject Compositions in its Google Play store and to sell permanent downloads to California consumers.

53.   Venue is proper in this District pursuant to 28 U.S.C §§ 1391(b), 1391(c) and 1400(a) because Plaintiffs are located in this District and Google has its principal place of business here. In addition, Defendants are subject to personal jurisdiction in this Judicial District and have committed unlawful acts of infringement in this Judicial District.

54.   Joinder of Limitless, Valleyarm and Google is proper under Fed. R. Civ. P. 20 because Defendants are jointly and severally liable as members of a distinct distribution chain for the acts of copyright infringement identified herein.

**Harry Warren**

55.   Harry Warren (1893-1981) has perhaps contributed more to the great American songbook than any other songwriter in history. Warren was born to Italian immigrant parents in Brooklyn, New York. After serving in the US Navy in World War I, Warren began writing songs.

56.   In the years 1931 to 1945, Warren wrote more hit songs than Irving Berlin. He was nominated for the Academy Award for Best Song eleven times (more than Berlin, George Gershwin, Cole Porter or Richard Rodgers) and won three Oscars for composing *Lullaby of Broadway*, *You'll Never Know,* and *On the Atchison, Topeka and the Santa Fe.*

57.    Warren wrote over 800 songs including *Chattanooga Choo Choo,* the first song to receive a gold record, presented by RCA Victor in 1942, for sales of 1.2 million copies. Over the course of his career, Warren wrote 81 top 10 hits, including timeless classics such as *At Last*, *I Only Have Eyes For You*, *That's Amore*, *You Must Have Been A Beautiful Baby*, *Jeepers Creepers*, and *The Gold Diggers' Song (We're in the Money)*.



58.    Warren was one of America's most prolific film composers, and his songs have been featured in over 300 films. Harry Warren was inducted into the Songwriters Hall of Fame in 1971.

**Four Jays Music Company & Julia Riva**

59.    In 1955 Harry Warren formed the Four Jays Music Company, a California corporation, to own the copyrights in his musical works.

60.    Four Jays Music Company acquired the copyrights in the respective Subject Compositions by assignment from Harry Warren and third party music publishers, as well as by assignment by Harry Warren's wife, daughter, and grandchildren, who acquired the copyrights by termination notices timely served and filed with U.S. Copyright Office under Section 304 of the Copyright Act of 1976.

61.    Plaintiff Four Jays Music Company is a legal owner of the U.S. copyright in certain of the Subject Compositions as identified in Exhibit A, along with all accrued causes of action.

62.     Julia Riva is a legal owner of the U.S. copyright in certain of the Subject Compositions as identified in Exhibit A, along with all accrued causes of action, as a result of termination notices filed and served on or after January 1, 1997.

### The Subject Compositions

63.     Plaintiffs are the owners of the musical compositions listed in the Composition Chart annexed as Exhibit A (collectively, the "Subject Compositions") that are the subject of this action.

64.     The copyrights for all the Subject Compositions have been registered and renewed with the U.S. Copyright Office, and each Subject Composition is the subject of a valid U.S. copyright. The Composition Chart annexed as Exhibit A identifies the copyright registration numbers for each of the Subject Compositions.

65.     Plaintiffs are the owner of a share in each of the Subject Compositions in the percentages listed on Exhibit A.

66.     As discussed more fully below, the Defendants have infringed, and are continuing to infringe, the copyright in each of the Subject Compositions by willfully reproducing and distributing them without a license.

### Background

67.     Before digital music distribution, recorded music was physically distributed through brick-and-mortar stores that were confined by the limitations of shelf space. Recording artists signed exclusive recording contracts with record labels in order to have their records pressed and distributed in national record stores.

68.     It is hard to imagine that a person walking into Tower Records, off the street, with arms full of CDs and vinyl records and claiming to be the record label for Frank Sinatra, Louis Armstrong and Ella Fitzgerald, could succeed in having that store sell their pirated copies directly next to the same albums released by legendary record labels, Capitol, RCA and Columbia, and at a lower price.

69.     Yet, this exact practice occurs every day in the digital music business, where there is unlimited digital shelf space (for example, there are more than 40

million recordings in the Google Play store) and a complete willingness by the digital music stores to seek popular and iconic recordings from any source, legitimate or not, provided they participate in sharing the proceeds.

70.     The iconic status of the pirated recordings of the Subject Compositions at issue in this case cannot be overstated. Any list of the most popular singers and musicians of any period between 1920 and 1970 would be replete with the artists who have recorded Plaintiffs' musical works, some of them multiple times.

71.     All the recordings on the Infringement Chart (Exh. B) embodying the Subject Compositions are pirated copies, or "bootlegs." Defendants' digital phonorecord deliveries of these pirated copies were all made without authorization from the copyright owners of the sound recordings or those who originally "fixed" them as required by Section 115 (discussed below), and the copyright owners of the Subject Compositions.

72.     Defendants all generate illicit revenue for themselves when these and other pirated copies are sold or distributed. Plaintiffs have not authorized any reproduction or distribution of these pirate recordings of the Subject Compositions (or any identified on Exhibit B) and it is an infringement for which all the Defendants are jointly and severally liable.

### The Pirated Recordings

73.     All of the recordings identified in Exhibit B are pirated. Defendants have taken recordings of the Subject Compositions – in which they hold no rights – and reproduced and distributed pirated copies of them to the public, for profit, without authorization.

74.     Virtually all of the recordings at issue in this case were originally made between 1923 and 1972.

75.     Since Limitless did not originally "fix" any of the relevant recordings, the only way for it to acquire the rights to duplicate and distribute them would be to purchase or license rights in these recordings.

76.     Upon information and belief, Limitless never acquired permission or the rights to reproduce or distribute any of these recordings from any person who lawfully fixed them or from the owner of the copyright in the sound recording. Limitless is simply duplicating previously released recordings and selling them as if they were the rightful owner. Valleyarm and Google are duplicating Limitless's pirated sound recordings of the Subject Compositions and selling the pirated copies for profit.

**Defendants Have Infringed the Subject Compositions**

77.     Section 115 of the Copyright Act expressly excludes Defendants' reproduction and distribution of pirated recordings of the Subject Compositions as a covered activity eligible for a compulsory license under Section 115 and Defendants have failed to obtain any licenses for the Subject Compositions that authorize such activity.

78.     The Infringement Chart annexed as Exhibit B sets forth (1) each pirated recording of the Subject Compositions within the Limitless, Valleyarm, Google distribution chain thus far identified by Plaintiffs that these Defendants have reproduced, distributed, and/or made available for digital phonorecord deliveries in Google's Google Play store without authorization.

79.     The various types of unauthorized reproductions, distributions, and/or digital phonorecord delivery configurations of each  of the pirated recordings of the Subject Compositions made and/or authorized by Defendants are discussed briefly below.

***Permanent Downloads***

80.     Permanent download means a digital transmission of a sound recording of a musical work in the form of a download, where such sound recording is accessible for listening without restriction as to the amount of time or number of times it may be accessed.

---

**COMPLAINT FOR COPYRIGHT INFRINGEMENT AND DEMAND FOR JURY TRIAL**

81.   Google has made available, reproduced, and distributed permanent downloads of the recordings of the Subject Compositions listed on Exhibit B to its customers.

82.   Google was unlawfully authorized and directed to do so by Limitless and/or Valleyarm.

83.   Reproducing or distributing permanent downloads of recordings of the Subject Compositions require licenses from the copyright owners of the Subject Compositions and all of the Defendants failed to obtain such licenses for each entry on the Infringement Chart at Exhibit B.

84.   The reproduction and distribution of permanent downloads of recordings of the Subject Compositions by Google, and the authorization of this activity by Limitless and Valleyarm, infringes Plaintiffs' exclusive reproduction and distribution rights under 17 U.S.C. § 106(1) and (3).

***Server Copies***

85.   Google has reproduced at least one copy of each recording of the Subject Compositions identified on Exhibit B on its servers for sale of permanent downloads in its Google Play store as server copies.

86.   Google was unlawfully authorized to engage in this activity by Limitless and/or Valleyarm.

87.   Making server copies of any of the recordings embodying the Subject Compositions identified on Exhibit B requires a license from the copyright owners of the Subject Compositions.

88.   All Defendants failed to obtain such licenses for each of the recordings embodying the Subject Compositions identified on Exhibit B.

89.   Google's reproduction of server copies of pirated recordings of the Subject Compositions for sale of permanent downloads in its Google Play store, and authorization of this activity by Limitless and Valleyarm, as well the distribution of the server copies of pirated recordings of Subject Composition to Google, by

Limitless and/or Valleyarm, infringes Plaintiffs' exclusive reproduction and distribution rights under 17 U.S.C. § 106(1) and (3).

### *Making Available*

90. Defendants have made and continue to make available, or authorize making available, permanent downloads of the recordings of the Subject Compositions identified on Exhibit B to the public by delivering, uploading and/or offering them as permanent downloads in Google Play.

91. The Defendants' making available recordings of the Subject Compositions identified on Exhibit B for permanent downloads, and authorization of this activity, by Limitless and/or Valleyarm, requires a license from the copyright owners of the Subject Compositions

92. Defendants failed to obtain such licenses for each recording of the Subject Compositions identified on Exhibit B and have thereby infringed Plaintiffs' exclusive distribution rights under 17 U.S.C. § 106(3) as a "deemed distribution." *A&M Records v. Napster*, 239 F.3d 1004, 1014 (9th Cir. 2001); *Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701 718–19 (9th Cir. 2007).

### *Importation*

93. Importation of phonorecords of a musical composition acquired outside the U.S. requires authorization of the owner of the copyright of the musical composition under Section 602 of the Copyright Act. Importation without the authority of the owner of the copyright in that composition is an infringement of the exclusive distribution rights under 17 U.S.C. § 106(3).

94. Defendants have engaged in the unauthorized importation of phonorecords of the Subject Compositions, acquired outside the U.S., by digital phonorecord deliveries, or other means.

95. Limitless and Valleyarm are located outside the United States. Valleyarm, at the direction of Limitless, and Google have engaged in the importation of phonorecords of each recording embodying the Subject Compositions listed on

Exhibit B into the United States by digital phonorecord delivery, or other delivery of phonorecords.

96.     None of the Defendants obtained importation authorization from the U.S. copyright owners of the Subject Compositions.

97.     Defendants' respective importations of phonorecords embodying the Subject Compositions identified on Exhibit B infringe Plaintiffs' exclusive importation rights under 17 U.S.C. § 602 and distribution rights under 17 U.S.C. § 106(3).

### Willfulness

98.     The infringing conduct of all of the Defendants is willful. Limitless knows that it does not have authority to reproduce, distribute or for importation of the recordings of the Subject Compositions listed on Exhibit B, or to authorize these actions by Valleyarm and Google. Limitless has pirated thousands of recordings and sold them in the United States through Google Play.

99.     Similarly, Valleyarm did not perform any investigation or due diligence to confirm that Limitless had authorization to reproduce, distribute, make, or authorize the making of digital phonorecord deliveries, or the importation, of the recordings of the Subject Compositions identified on Exhibit B.

100.   In fact, Valleyarm has had knowledge of the infringing conduct of Limitless and has nevertheless continued to make digital phonorecord deliveries and other reproductions and distributions of the pirated recordings of the Subject Compositions that Limitless provides without any licenses, and/or were recklessly indifferent or willfully blind to their own infringing conduct.

101.   Further, Google has had knowledge of its own infringing conduct and that of Limitless and Valleyarm and has continued to work with them and make digital phonorecord deliveries and other reproductions and distributions of the pirated recordings of the Subject Compositions that Limitless and Valleyarm provide and/or were recklessly indifferent or willfully blind to their own infringing conduct.

102.   Finally, Google has willfully failed to employ adequate human resources, screening mechanisms, or use of digital fingerprinting technology to detect unlawfully duplicated recordings in their stores that it routinely uses for other services, for example, YouTube, or the Google Play "scan and match" service.

103.   In addition to the recordings identified on Exhibit B, there are believed to be many other pirated recordings of the Subject Compositions that Defendants have reproduced and distributed without authorization that Plaintiffs have not yet identified or that are no longer available on Google Play.

104.   The infringement by Defendants of each Subject Composition on each pirated recording identified in the Infringement Chart at Exhibit B began as of the date of upload, receipt, delivery to and/or reproduction by Google of server copies of the pirated recordings of the Subject Compositions designated for reproduction and distribution by Limitless and/or Valleyarm in Google Play and continues to the present. The infringements identified in Exhibit B all occurred within three years of filing this Complaint.

105.   By their conduct described above, Defendants have infringed and are continuing to infringe Plaintiffs' copyrights on a regular basis in violation of 17 U.S.C. §§ 101, 106, 115, 501, 602 *et seq*.

106.   As a direct and proximate result of Defendants' infringement, Plaintiffs are entitled to elect either an award of actual damages, including Defendants' profits, or statutory damages under 17 U.S.C. § 504(c).

107.   Defendants' infringement is and has been willful, intentional, purposeful and with willful disregard of the rights of Plaintiffs. Anything less than maximum statutory damage awards would encourage infringement, amount to a slap on the wrist, and reward Defendants for their willful infringement on a grand scale.

108.   Plaintiffs are also entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

109.   Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting Defendants from reproducing, distributing, importing and selling the pirated recordings of the Subject Compositions without license or authorization in violation of the Copyright Act.

**Claim for Copyright Infringement Against
Google, Valleyarm, and Limitless**

110.   Plaintiffs repeat each and every allegation of the Complaint.

111.   Plaintiffs   Four Jays Music Company and Julia Riva claim that Defendants Google, Valleyarm, and Limitless have unlawfully reproduced, distributed, and imported unauthorized recordings embodying the Subject Compositions including, but not limited to, the recordings identified in Exhibit B by the methods identified herein, and/or have unlawfully directed or authorized this activity.

112.   Defendants have thereby willfully infringed, and are continuing to infringe, Plaintiffs' copyrights in the Subject Compositions in violation of the Copyright Act.

**Prayer for Relief**

WHEREFORE, Plaintiffs respectfully request that judgment be entered against Defendants, jointly and severally, as follows:

1.   A declaration that Defendants have infringed Plaintiffs' copyrights in the Subject Compositions in violation of the Copyright Act;

2.   A declaration that each of Defendants' infringements was willful;

3.   At Plaintiffs' election, an award of Plaintiffs' actual damages, including Defendants' profits, or a separate award of statutory damages in amounts to be determined by the jury for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally;

COMPLAINT FOR COPYRIGHT INFRINGEMENT AND DEMAND FOR JURY TRIAL

4.   A permanent injunction barring the Defendants from continued infringement of Plaintiffs' copyrights in the Subject Compositions pursuant to 17 U.S.C. § 502; and

5.   Reasonable attorneys' fees and costs of this action, statutory pre-judgment interest, and such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Local Rule 38-1, and otherwise, Plaintiffs respectfully demand a trial by jury on all issues so triable.

Dated:   New York, New York
         January 22, 2020

Respectfully submitted,

By:   /s/   Allen Hyman
      Allen Hyman (California State Bar No. 73371)
      LAW OFFICES OF ALLEN HYMAN
      10737 Riverside Drive
      North Hollywood, CA 91602
      Phone: (818) 763-6289
      E-mail: lawoffah@aol.com

      Oren S. Giskan  *Pro Hac Vice Pending*
      GISKAN SOLOTAROFF & ANDERSON LLP
      90 Broad Street, 10th Floor
      New York, New York 10004
      Phone: (212) 847-8315
      Fax: (646) 520-3237
      E-mail: ogiskan@gslawny.com

      *Attorneys for Plaintiffs*

24